**Isabel ARIAS, et al., Appellants**

v.

**UNITED STATES SERVICE INDUSTRIES, INC.,**
**Appellee.**

No. 95–7158.

United States Court of Appeals, District of Columbia Circuit.

Argued March 8, 1996.

Decided April 5, 1996.

**510**

Carol R. Golubock, Orrin Baird, Washington, DC and Eunice H. Washington, Upper Marlboro, MD, were on the briefs for appellants.

Joel I. Keiler, Washington, DC, was on the brief for appellee.

Before: EDWARDS, Chief Judge, SILBERMAN and GINSBURG, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

The District Court entered judgment in favor of defendant United States Service Industries, Inc. ("USSI") in a suit brought by several of USSI's employees under the Fair Labor Standards Act ("FLSA") and the D.C. Minimum Wage Act seeking compensation and liquidated damages for unpaid overtime and split-shift [1] wages. *Arias v. United States Service Industries, Inc.,* Civ. Action No. 93–2261 (D.D.C. June 9, 1995) ("Judgment on the Verdict for Defendant"), *reprinted in* Appendix ("App.") Tab 6 at 105–07. We find that the District Court misapplied the law governing the parties' respective burdens of proof on the overtime pay issue; accordingly, we clarify the present state of the parties' burdens and remand the overtime issue for further proceedings. In addition, we find that appellant Isabel Arias is entitled to actual and liquidated damages for unpaid split-shift wages, and, as to that claim, we direct the District Court to enter judgment in Ms. Arias' favor in the amount of $3,733.50.

I.

Appellants in this case are six employees of USSI, a janitorial service company that employed appellants to clean office buildings in Washington, D.C. and Maryland. Appellants claim that, during the period from November 1, 1990 through August 31, 1994, USSI often failed to compensate them at one and a half times their regular rate of pay for hours worked at overtime—*i.e.,* hours worked in excess of forty in a given workweek—as required by the FLSA, 29 U.S.C. § 207(a)(1) (1994).

Appellants assert that USSI's failure to compensate them for overtime was partly due to the fact that USSI did not keep records of total hours worked and total wages paid on a *workweek* basis, as required under FLSA regulations, 29 C.F.R. § 516.2(a) (1995). Rather, contrary to the applicable regulations, USSI compiled records showing only total hours worked *per shift* during *semi-monthly pay periods.* For obvious reasons, these records make it extremely difficult to calculate overtime pay for time worked in excess of forty hours *per week.*

USSI maintained two types of records on which an employee's hours were contemporaneously recorded: time cards and sign-in sheets. USSI was unable to produce all of appellants' time cards and sign-in sheets for the period at issue (some records apparently having been lost during two floods and others having been destroyed by rodents), but all of the relevant time cards and sign-in sheets that USSI did have for appellants were included in appellants' Exhibit 8, which the District Court accepted into evidence. Brief for Appellants at 4.

One of appellants' witnesses, a legal secretary named Stephanie Collins, attempted to summarize the voluminous record of time cards, sign-in sheets, and payroll documents. Her summary was labeled Exhibit 16 at trial.

---

1. According to District of Columbia wage law, a "split shift" is "a schedule of daily hours in which the hours worked are not consecutive, except that a schedule in which the total time out for meals does not exceed one (1) hour shall not be considered a 'split shift'." D.C.Mun.Regs., tit. 7, § 999.2 (1986).

In her testimony, Ms. Collins explained how she created Exhibit 16. She copied the information from the time and payroll records on calendars for the months in issue. For each appellant, Ms. Collins attempted to convert USSI's records into a summary showing the total number of hours worked in each workweek, along with the number of workweek hours, if any, for which the employee had been compensated at the overtime rate. Exhibit 16 showed that each appellant was owed some amount of unpaid overtime wages.

At trial, USSI put in no evidence of its own showing appellants' overtime hours and wages; rather, USSI merely sought to discredit certain aspects of Ms. Collins' methodology in constructing Exhibit 16. For example, where the payroll records indicated that compensation was paid, but no notation had been made regarding the number of hours being compensated by the payment, Ms. Collins divided the gross payment by the employee's regular pay rate to determine the number of hours for which the employee was being compensated, and plotted that number of "hours worked" on her calendar summary (presumably dividing the hours evenly over the workdays in the pay period in which the check issued). USSI contended that Ms. Collins' treatment of unmarked checks failed to take account of USSI's alleged practice of issuing make-up checks for overtime wages after the pay period in which the overtime hours had been worked, a practice of which Ms. Collins was not aware.[2] *See* Brief for Appellee at 8.

At the close of trial, the District Court summarily ruled from the bench in favor of USSI. The trial court concluded that Ms. Collins was "beyond her depth" in constructing Exhibit 16, and that the "inferences" she drew in summarizing the underlying documentation provided in Exhibit 8 were actually "guess[es]." Transcript of Ruling, App. Tab 6 at 106–07. In particular, the District Court noted that "some of the assumptions [Ms. Collins] used in creating Exhibit 16

would have been incorrect if certain employer practices, such as make-up overtime checks, had been in place." *Id.* at 107. Significantly, the trial court found that the evidence produced at trial had not actually established the existence of a make-up-check practice, but, rather, had only established that Ms. Collins did not know whether such a practice was in place. *Id.* Nevertheless, the trial court ruled that appellants had not met their burden of making "some sort of just and reasonable inference as to what should have been paid and what was in fact paid." *Id.* at 106.

## II.

■ We find that the District Court erred as a matter of law in failing to rule that appellants had met their burden of proof, and also in failing to hold USSI to its burden of coming forward with counter-estimates of appellants' overtime hours and wages, as required by *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). In *Mt. Clemens,* the Supreme Court established the framework for allocating burdens of proof in cases brought under the FLSA for unpaid wages or overtime compensation. Under *Mt. Clemens,* an employee bringing suit "has the burden of proving that he performed work for which he was not properly compensated." 328 U.S. at 687, 66 S.Ct. at 1192. However,

> where the employer's records are inaccurate or inadequate . . . . [t]he solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty. . . .

*Id.* Rather, the Court held that,

> [i]n such a situation . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he pro-

2. USSI also argues that Exhibit 16 was flawed because Ms. Collins was not aware that a pretrial order issued in the case had excluded hours worked at certain locations from consideration. Brief for Appellee at 8. Appellants respond that

the pretrial order imposed no such limitation. Reply Brief for Appellants at 7. On remand, the trial court is free to interpret its own pretrial order in assessing damages.

duces sufficient evidence to show the amount and extent of that work *as a matter of just and reasonable inference.* The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. *If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.*

*Id.* at 687–88, 66 S.Ct. at 1192 (emphasis added).

In light of the evidentiary difficulties appellants faced as a result of USSI's failure to maintain accurate time and payment records by workweek, and to denominate clearly the number of hours being compensated by some payments, appellants' construction and presentation of Exhibit 16 is sufficient to establish an amount and extent of work and wages as a matter of just and reasonable inference as contemplated by *Mt. Clemens.* We find nothing unduly speculative about the inferences drawn by Ms. Collins in creating Exhibit 16 as a summary of the voluminous time and payroll records, especially in light of the employer's complete failure to comply with the law in maintaining payroll records. "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [it] kept records in accordance with the requirements of . . . the [FLSA]." *Id.* at 688, 66 S.Ct. at 1192–93. The burden is now on USSI to come forward with evidence supporting its own counter-estimates of appellants' overtime hours and wages; unless USSI is able to present such evidence, judgment must be entered for appellants in the amounts specified in Exhibit 16, "even though the result be only approximate." *Id.*

Therefore, as to the overtime issue, we vacate the District Court's entry of judgment in favor of USSI and remand for further proceedings. On remand, the District Court may determine the propriety of allowing USSI to present and substantiate any counter-estimates it may have, and the District Court must then compare appellants' estimates and USSI's counter-estimates, if any, in setting the amount of damages.

■ Further, the District Court must determine whether the acts or omissions giving rise to USSI's violation were in "good faith" and whether USSI had "reasonable grounds" for believing that such acts or omissions were not in conflict with the FLSA. If the District Court fails to find "good faith" and "reasonable grounds," appellants will be entitled to both actual damages and liquidated damages (equal to actual damages) under 29 U.S.C. §§ 216(b) & 260 (1994). *See Thomas v. Howard Univ. Hosp.,* 39 F.3d 370, 372–73 (D.C.Cir.1994).

Finally, regarding the range of damages to be awarded, the District Court should determine whether the violations were "willful," such that appellants would be entitled to the three-year statute of limitations period provided for under 29 U.S.C. § 255(a) (1994), instead of the otherwise applicable two-year period, *id. See, e.g., Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 461–62 (D.C.Cir. 1976) (The court rejected "a definition of 'willful' in the suit-limitation provision which would demand proof that the employer entertained a bad purpose or an evil intent;'" rather, the court held that an employer's noncompliance with the FLSA "is 'willful' when he is cognizant of an appreciable possibility that he may be subject to the statutory requirements and . . . . consciously and voluntarily charts a course which turns out to be wrong."), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *accord Laffey v. Northwest Airlines, Inc.,* 740 F.2d 1071, 1085–87 (D.C.Cir.1984), *cert. denied,* 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 951 (1985).

### III.

■ One appellant, Isabel Arias, has claimed that, in addition to overtime wages, she is entitled to damages for unpaid premium wages for split shifts that she worked as an employee of USSI. District of Columbia wage law in effect during the period when Ms. Arias worked split shifts required that "every employer shall pay an employee for one (1) additional hour at the applicable minimum wage *for each day* during which the . . . employee works a split shift." (D.C.Mun.

Regs., tit. 7, § 908.1 (1986) (emphasis added). The District Court made no findings as to Ms. Arias' split-shift wage claim, but USSI does not dispute on appeal the number of split shifts that Ms. Arias claims to have worked or her assertion that she was not paid an additional hour of minimum wage for each such split shift.

Rather, USSI argued before the District Court, and in its brief before this court, that the D.C. split-shift wage requirement is satisfied where the total amount paid an employee for each workweek in which a split shift is worked is at least equal to the total number of hours worked, plus one extra hour for each split-shift day, times the minimum hourly rate required by D.C. law. USSI relies on the testimony of its former payroll manager, Devra Holmberg, who stated that she called the D.C. government for an interpretation of the split-shift law and received the above interpretation from an unnamed D.C. employee. Moreover, USSI asserts that its interpretation of the D.C. split-shift requirement comports with *Dove v. Coupe,* 759 F.2d 167, 171–72 (D.C.Cir.1985), where this court held that the relevant time period is the workweek, not the individual hour, for determining whether an employer has satisfied the minimum wage requirements of the FLSA and the D.C. Minimum Wage Act.

We find USSI's proposed statutory construction to be specious. The D.C. split-shift requirement is clear on its face in mandating that a premium is owed *"for each day during which the ... employee works a split shift,"* D.C.Mun.Regs., tit. 7, § 908.1 (1986) (emphasis added), regardless of the amount paid to the employee for the entire workweek. Moreover, USSI's reliance on *Dove v. Coupe* is misplaced, because the court's ruling in that case specifically relied on a finding that the purpose behind the general minimum wage provision was "met by the workweek standard," 759 F.2d at 171, whereas the apparent purpose of the split-shift wage requirement—to provide additional pay as a premium for working onerous shifts that ex-tend the workday, *see* Brief for Appellants at 37—would be frustrated by focusing attention on the workweek instead of the workday. The statute is clear, and USSI cites nothing to the contrary in the case law of the District of Columbia.

Because it is undisputed on appeal that Ms. Arias worked 393 split-shift days during the three-year limitations period provided under the D.C. Minimum Wage Act, D.C.CODE ANN. § 36–220.12 (1993), and because it is also undisputed that $4.75 per hour was the lowest minimum wage applicable during that period, *see* Brief for Appellants at 43, we conclude that Ms. Arias is entitled to actual damages in the amount of $1,866.75. Further, we find that USSI's failure to abide by the D.C. split-shift wage requirement was based neither on good faith nor on a reasonably grounded belief that USSI's conduct was in accordance with the wage law; accordingly, we hold that Ms. Arias is entitled to liquidated damages in the amount of $1,866.75.[3] Therefore, as to appellant Arias' split-shift claim, we reverse the District Court's entry of judgment for USSI and direct entry of judgment in favor of Ms. Arias in the amount of $3,733.50.

### IV.

For the foregoing reasons, the judgment of the District Court is reversed in part, and vacated and remanded in part for further proceedings consistent with this opinion.

*So ordered.*

---

**3.** Like the FLSA, the D.C. Minimum Wage Act requires that an improperly compensated employee receive liquidated damages (in addition to actual damages), unless "the employer shows to the satisfaction of the court that the act or omis-sion that gave rise to the action was in good faith and that the employer had reasonable grounds for the belief that the act or omission was not a violation of this subchapter." D.C.CODE ANN. § 36–220.11 (1993).