1997 OK 80

Earl **RUSSELL,** Gary Watson, Gary Smith, Mack Word, Steven Henson, Ruben Garcia, Kenneth Turner, Greg Theobald, Wayne Magee and Bryan Burton, Plaintiffs–Appellants,

v.

**BOARD OF COUNTY COMMISSION-ERS, CARTER COUNTY,** State of Oklahoma, Defendant–Appellee.

No. 86358.

Supreme Court of Oklahoma.

June 24, 1997.

Rehearing Denied Feb. 18, 1998.

I

## THE ANATOMY OF LITIGATION

¶2 Ten deputy sheriffs of Carter County [deputies, deputy sheriffs or plaintiffs] commenced a breach-of-employment-contract action against the Board of County Commissioners [Board, county or commissioners] to recover overtime pay alleged to be due them under an at-will employment arrangement with the county. The deputies *pressed for summary relief,* arguing that the commissioners (a) *established* uniform personnel policies for county employees, (b) *published* the policies in a handbook which embodied the Board's practice of paying overtime to county employees, and (c) *distributed* the manual to county employees. They are entitled to the overtime benefits sought, the deputies argue, because (a) the handbook states that law enforcement (and other county) personnel are to be paid overtime compensation, (b) deputy sheriffs are law enforcement officers, and (c) under the terms of the manual, other sheriff employees receive overtime and holiday pay. The written policy, the deputies urge, became a part of their at-will employment contract, which the county has breached by its refusal to provide the overtime compensation pressed for payment.

¶3 The Board *also sought victory by summary adjudication process,* arguing that the *handbook did not constitute a contract.* Even if some language in the manual could create contractual obligations, the Board urges, material fact issues exist as to whether (a) the handbook rises to the level of a contract and (b) its overtime provisions apply to these deputy sheriffs. Noting the deputy sheriffs' claim to overtime pay was not founded on the Fair Labor Standards Act [FLSA or Act],[1] the Board theorized that the deputies' strategy was most likely ascribable to federal jurisprudence (*Nichols v. Hurley* ),[2] which teaches that because deputy sheriffs fall within the FLSA's *personal staff exemption,* they stand excluded from the Act's overtime pay provisions.

¶4 Rejecting the Board's interpretation of *Nichols,* although not disputing the notion

Ronald E. Worthen, Ardmore, for Appellants.

Rodney C. Ramsey, Hall, Estill, Hardwick, Gable, Golden & Nelson, Oklahoma City, for Appellee.

OPALA, Justice.

¶1 The dispositive issue on certiorari is whether there was error in entering summary judgment for the county. We answer in the affirmative.

---

1. 29 U.S.C. §§ 201 et seq.

2. 921 F.2d 1101, 1103 (10th Cir.1990).

their claim was based solely on contract, the deputy sheriffs point out the circumstances of this case are substantially different from those in *Nichols*. They *note* that *here* (a) the *overtime policy was adopted by a statutorily authorized personnel board*, (b) the deputies are further removed from the sheriff's direct supervision than those in *Nichols*, and (c) the size of the staff that consists of deputies, jailers and technicians is not determined solely by the sheriff's discretion, but must be approved by the county excise board. Moreover, they *urge*, *Nichols* rests on a federal-court interpretation of Oklahoma statutes, which this court is not bound to follow.

¶ 5 The trial court gave summary judgment to the Board, and the deputies appealed. The Court of Civil Appeals [COCA] *reversed*. Although agreeing that the Board's overtime policy does not create or constitute a contractual right to overtime, the COCA opinion treats that issue as nondispositive of the deputies' right to recover. The COCA (a) *notes* that the Board does not treat equally *"all county employees who work overtime, as defined by federal fair labor standards for their particular employment,"* for the allowance of overtime benefits,[3] (b) *opines* that the Board may discriminate for overtime pay ·*only if* a reasonable basis exists for allowing some county employees to receive overtime compensation and denying the same benefit to others, and (c) *remands* the cause for the trial court's decision on whether there is a rational basis for treating these deputies differently for over-

time pay from other county employees. *It is somewhat unclear* whether the COCA (a) *remanded* the cause for consideration of both a FLSA claim and a federal-law claim based on equal protection or (b) *intended* the equal protection issue to assist the deputies in asserting a claim based directly on the manual. The Board seeks our review by certiorari.

▮▮▮ ¶ 6 The COCA treated the deputies' contractual theory with a conclusory rejection,[4] giving prominence to the FLSA-and-equal-protection aspect of the claim. Because the COCA viewed as nondispositive the errors urged under the contractual theory, all of them went unaddressed. We must hence treat them as undecided in the *Hough v. Leonard*[5] sense. *Hough* teaches that the party victorious in the COCA is entitled to our *sua sponte* review of all issues which, though properly preserved and briefed on appeal, were not addressed by the appellate court.[6]

## II

## STANDARD OF REVIEW

▮▮▮ ·¶ 7 The focus in summary process is not on facts a plaintiff might be able to prove at trial (*i.e.*, the legal sufficiency of evidence that could be adduced) but rather on whether the evidentiary materials as a whole (a) show undisputed facts on some or all material issues and (b) will support but a single inference in favor of a successful movant's quest for· relief.[7] Summary adjudica-

---

3. The COCA's opinion (emphasis in the text and supplied).

4. The COCA relegated to a nondispositive category the deputies'· contractual theory. The COCA notes that "... the trial court ruled that the [overtime] policy did not create or constitute a contractual right to overtime. While we agree with this conclusion, it is not dispositive of the deputies' right to recovery."

5. 1993 OK 112, 867 P.2d 438, 445–46; *Washington v. State ex rel. Dept. of Corrs.*, 1996 OK 139, 915 P.2d 359, 361; *Resolution Trust Corp. v. Greer*, 1995 OK 126, 911 P.2d 257, 260.

6. *Hough, supra* note 5 at 445–46. There is another reason why the undecided issues are reviewable absent a certiorari quest by the deputies. One who seeks no corrective relief beyond that already afforded by the COCA opinion *needs*

no petition for certiorari to keep the fruits of achieved victory. The deputy sheriffs stand in that posture. Because they want the COCA reversal of an adverse nisi prius summary judgment to remain undisturbed by this court, the deputies are free to advocate before us *any error*, which, if rectified, would prove that COCA reversal correct in its result. *Bivins v. State ex rel. Okl. Mem. Hosp.*, 1996 OK 5, 917 P.2d 456, 465; *Woolfolk v. Semrod*, 1960 OK 98, 351 P.2d 742, 745. Today's opinion gives the deputies no greater relief than that which they received at the hands of the COCA.

7. *Hulsey v. Mid–America Preferred Ins. Co.*, 1989 OK 107, 777 P.2d 932, 936 n. 15. An order that grants summary relief disposes solely of questions of law. It is reviewable *de novo*. An appellate court claims for itself plenary, independent and nondeferential authority to re-examine a tri-

tion process—a special pretrial procedural track to be conducted with the aid of acceptable probative substitutes [8]—*is a search for undisputed material facts* that may be applied, *sans* forensic combat, in the judicial ·decision-making process. It is a method for identifying and isolating non-triable fact issues, not a device for defeating the opponent's right to trial by jury. Only that evidentiary material which entirely eliminates from trial some or all fact issues may afford legitimate support for nisi prius resort to summary process.

## III

### ¶ 8 IN A PUBLIC–LAW CASE, THE REVIEWING COURT CAN GRANT CORRECTIVE RELIEF *SUA SPONTE* ON A THEORY NOT RAISED BELOW

¶ 9 The Board argues that the summary judgment should not be reversed on a claim—one for violation of the FLSA—that was not pressed in the trial court and is unsupported by the record.

 ¶ 10 When resolving a public-law controversy, the reviewing court is generally free to grant corrective relief upon any applicable legal theory dispositive of the case. Appellate freedom to raise and settle public-law issues *sua sponte* is circumscribed not by

arguments tendered by the parties but rather by the record brought for review.[9]

¶ 11 We cannot decide today, as explained in Part IV *infra*, either as a matter of law or on this record, that the FLSA is applicable to the deputy sheriffs' claim for uncompensated overtime and holiday work.

## IV

### THE FAIR LABOR STANDARDS ACT

 ¶ 12 The deputy sheriffs *neither pleaded below nor urged on appeal* that the FLSA's overtime provisions are applicable to their compensation claim. If the COCA intended to inject that issue *sua sponte* (by its reference to the fair labor standards), its holding is *plain error.* This is so because a FLSA-based claim is not only *sans record support,* but its infusion on appeal would *transform* the deputies' contractual claim into a different demand rather than merely *supply a new theory for recovery.* Moreover, the COCA's opinion did not pause to consider the timeliness of a FLSA claim. Because we hold today in Part V *infra* that summary judgment cannot stand on other grounds and there is a possibility of a postremand amendment to the pleadings,[10] we must

al court's legal rulings. ·*Kluver v. Weatherford Hospital Auth.,* 1993 OK 85, 859 P.2d 1081, 1084. Oklahoma's summary adjudication process is similar to that followed by the federal judicial system. *See Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

8. "'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Gray v. Holman,* 1995 OK 118, 909 P.2d 776, 781 n. 16 (quoting from *Seitsinger v. Dockum Pontiac Inc.,* 1995 OK 29, 894 P.2d 1077, 1080–81); *Davis v. Leitner,* 1989 OK 146, 782 P.2d 924, 926–27.

9. In a public-law controversy this court is free to change the theory presented by the parties below and followed by the trial court. *Jackson v. Oklahoma Memorial Hosp.,* ·1995 OK·112, 909 P.2d 765, 768; *North Side State Bank v. Board of County Com'rs of Tulsa County,* 1994 OK 34, 894 P.2d 1046, 1050 n. 8; *Schulte Oil Co., Inc. v. Oklahoma Tax Com'n,* 1994 OK 103, 882 P.2d 65, 69 n. 8; *Strelecki v. Oklahoma Tax Com'n,* 1993 OK 122, 872 P.2d 910, 920 n. 66; *Simpson*

*v. Dixon,* 1993 OK 71, 853 P.2d 176, 187 n. 55; *McNeely, Matter of,* 1987 OK 19, 734 P.2d 1294, 1296; *Reynolds v. Special Indem. Fund,* 1986 OK 64, 725 P.2d 1265, 1270; *Burdick v. Independent Sch. Dist. No. 52 of Oklahoma County,* 1985 OK 49, 702 P.2d 48, 54 n. 10; *McCracken v. City of Lawton,* 1982 OK 63, 648 P.2d 18, 21 n. 11; *Application of Goodwin,* 1979 OK 106, 597 P.2d 762, 764; *Special Indemnity Fund v. Reynolds,* 199 Okl. 570, 188 P.2d 841, 842 (1948).

10. On remand following a reversal the parties are relegated to their prejudgment posture. *Nelson v. Pollay,* 1996 OK 142, 916 P.2d 1369, 1376–1377; *Fent v. Okl. Nat. Gas,* 1994 OK 108, 898 P.2d 126, 134; *Thomas v. National Auto. & Cas. Ins. Co.,* 1994 OK 52, 875 P.2d 424, 428; *Dyke v. St. Francis Hosp.,* 1993 OK 114, 861 P.2d 295, 304 n. 36; *Parker v. Elam,* 1992 OK 32, 829 P.2d 677, 682; *Seymour v. Swart,* 1985 OK 9, 695 P.2d 509, 512–513. · If the plaintiffs should replead to include a FLSA-based claim for overtime compensation, the trial court should not treat it as excepted from (or included within) that Act *as a matter of law. We express no opinion as to the timeliness of such a claim.*

discuss and give guidance on the FLSA's impact, if any, upon this lawsuit.

¶ 13 The FLSA requires employers to pay their employees for overtime at a rate of one and one-half times the regular rate of pay for each hour in excess of the normal work week.[11] The Act's enforcement provisions [12] create a private right of action for any violation of the maximum hours and overtime pay provisions.[13] Concurrent jurisdiction over FLSA-generated controversies stands conferred on both state and federal courts.[14] The FLSA applies to employees of state and local governments.[15] An employee who brings an action for unpaid overtime compensation under the FLSA has the *burden of proving that work was performed in excess of 40 hours for which no compensation was given.*[16] A showing must be made of (a) the *amount* and *extent* of overtime work as a matter of *just and reasonable inference* and (b) the employer's knowledge of the uncompensated time.[17] A FLSA claim

11. The pertinent terms of 29 U.S.C. § 207(a)(1) provide:
(a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions
(1) Except as otherwise provided in this section, *no employer shall employ any of his employees* who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, *for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified* at a rate not less than one and one-half times the regular rate at which he is employed. (Emphasis supplied.)
See also *Moreau v. Klevenhagen,* 508 U.S. 22, 23, 113 S.Ct. 1905, 1906, 123 L.Ed.2d 584 (1993); *White v. City of Dothan,* 643 So.2d 1005, 1006 (Ala.Civ.App.1994); *Spinden v. G.S. Roofing Products Co., Inc.,* 94 F.3d 421, 426 (8th Cir. 1996), cert. denied — U.S. —, 117 S.Ct. 1254, 137 L.Ed.2d 334 (1997).
The term "regular rate" (as defined in § 207(e) of the FLSA) includes, *inter alia,* "all remuneration for employment paid to, or on behalf of, the employee," except for (1) sums paid as gifts, (2) *payments for vacations, holidays,* illness, reasonable travel expenses, "and other similar payments to an employee which are not made as compensation for ... hours of employment," (3) sums paid as a result of services performed if both the fact of payment and the amount are "at the sole discretion of the employer or at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly," (4) irrevocable contributions made by the employer to retirement or insurance plans and (5) extra "premium" compensation paid for overtime work.

12. 29 U.S.C. § 216.

13. 29 U.S.C. § 207. The FLSA also creates a right of action for violations of the minimum wage and equal pay provisions. 29 U.S.C. § 206.

14. 29 U.S.C. § 216(b); *Freudenberg v. Harvey,* 364 F.Supp. 1087, 1090 (E.D.Pa.1973); *Goettel v.*

*Glenn Berry Mfrs., Inc.,* 236 F.Supp. 884, 884 (N.D.Okl.1964); *Kreus v. Stiles Service Center,* 250 Neb. 526, 550 N.W.2d 320, 325 (1996).

15. *Auer v. Robbins,* 519 U.S. 452, —, 117 S.Ct. 905, 909, 137 L.Ed.2d 79 (1997); *Garcia v. San Antonio Metropolitan Transit Auth.,* 469 U.S. 528, 546–547, 105 S.Ct. 1005, 1015–1016, 83 L.Ed.2d 1016 (1985). Before 1974 the FLSA was not applicable to state and local government employees. 29 U.S.C. § 203(d) (1940). In 1974 Congress extended FLSA coverage to virtually all public-sector employees. Pub.L. 93–259, § 6, 88 Stat. 58–62 (29 U.S.C. § 203(d) (Supp. IV 1974)). In 1976 the U.S. Supreme Court held that the expansion of the FLSA to cover state and political subdivision employees engaged in traditional government functions was violative of the Tenth Amendment. *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). Some nine years later *Garcia, supra,* overruled *National League,* holding that this exercise of power was consistent with the Tenth Amendment of the U.S. Constitution. Following that decision, the U.S. Department of Labor announced that it would hold state and local government employers to the standards of the FLSA, effective April 15, 1985. S.Rep. No. 99–159, p. 7 (1985), U.S.Code Cong. & Admin.News 754, 758. *Garcia, supra,* 469 U.S. at 546–547, 105 S.Ct. at 1015–1016.

16. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946) (an employee bears the initial "burden of proving that he performed work for which he was not properly compensated"); *American Waste Removal Co. v. Donovan,* 748 F.2d 1406, 1410 (10th Cir.1984); *Arias v. U.S. Service Industries, Inc.,* 80 F.3d 509, 511 (D.C.Cir.1996).

17. *Anderson, supra* note 16, 328 U.S. at 686–87, 66 S.Ct. at 1192; *Davis v. Food Lion,* 792 F.2d 1274, 1276 (4th Cir.1986). Where an employer has failed to keep proper and accurate records in violation of the FLSA, an employee maintains his burden of proof "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that

must be commenced within two years after it has accrued, unless the action arises out of a "willful" violation—in which case it must be commenced within three years after accrual.[18]

¶ 14 The FLSA provides for several exemptions from its overtime protections: (a) law enforcement organizations which employ fewer than five persons,[19] (b) employees of governmental subdivisions who are not covered by civil service laws and are on the *personal staff of a publicly elected officer*[20] and (c) persons who are employed in a bona fide executive, administrative or professional capacity.[21] Because the Act establishes a *presumption of coverage*,[22] ex-

emptions are construed narrowly against the employer.[23] A claim to a FLSA exemption is an affirmative defense on which the employer bears the burden of showing that its employees fit "plainly and unmistakably within [the exemption's] terms and spirit."[24]

¶ 15 *Nichols*[25] does not, as the County urges, hold that deputy sheriffs are members of the sheriff's personal staff and hence exempts them, *as a matter of law,* from FLSA's overtime protection. The inquiry into an employee's exempt status under the FLSA remains "intensely fact bound and case specific."[26] In *Nichols* several former deputy sheriffs in two Oklahoma counties (LeFlore and McIntosh) pressed a FLSA

work as a matter of just and reasonable inference." *Anderson, supra* note 16, 328 U.S., at 687, 66 S.Ct. at 1192. At this point, the burden of production shifts to the employer to produce evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. *Id.*

**18.** 29 U.S.C. § 255(a). The Portal–to–Portal Act, 29 U.S.C. § 255(a), provides a two-tiered statute of limitations for FLSA actions. For ordinary violations, the statute of limitations is two years; for *willful violations*, a three-year limitations period applies. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 132, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988).

**19.** 29 U.S.C. § 213(b)(20).

**20.** 29 U.S.C. § 203(e)(2)(C)(i) and (ii)(II). The personal staff exception is a question of federal law. State law is only relevant as it defines the plaintiff's (employee's) position and duties. *See, e.g., Nichols, supra* note 2 at 1103; *Owens v. Rush,* 654 F.2d 1370, 1375 (10th Cir.1981); *Calderon v. Martin County,* 639 F.2d 271, 273 (5th Cir.1981).

**21.** 29 U.S.C. § 213(a)(1). *Carpenter v. City & County of Denver, Colo.,* 82 F.3d 353, 355 (10th Cir.1996); *Aaron v. City of Wichita, Kan.,* 54 F.3d 652, 657 (10th Cir.1995), cert. denied, 516 U.S. 965, 116 S.Ct. 419, 133 L.Ed.2d 336 (1995).

**22.** *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–197, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); *Powell v. United States Cartridge Co.,* 339 U.S. 497, 516, 70 S.Ct. 755, 766, 94 L.Ed. 1017 (1950) ("breadth of coverage" is "vital to [the Act's] mission"); *Schultz v. W.R. Hartin & Son, Inc.,* 428 F.2d 186, 189 (4th Cir.1970); *Thomas v. County of Fairfax, Va.,* 758 F.Supp. 353, 358 (E.D.Va.1991); *Thomas v. County of Fairfax, Va.,* 803 F.Supp. 1142, 1151 (E.D.Va.1992); *Smith v.*

*United Parcel Service, Inc.,* 890 F.Supp. 523, 526 (S.D.W.Va.1995).

**23.** *Tennessee Coal, Iron, and R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 597, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944); *Nichols, supra* note 2 at 1103; *Marshall v. Woods Hole Oceanographic Institution,* 458 F.Supp. 709, 719 (D.C.Mass. 1978); *Brennan v. Dillion,* 483 F.2d 1334, 1337–1338 (10th Cir.1973). FLSA exemptions are to be narrowly construed in order to further Congress' goal of providing broad federal employment protection. *Mitchell v. Lublin, McGaughy & Assoc.,* 358 U.S. 207, 211, 79 S.Ct. 260, 263, 3 L.Ed.2d 243 (1959).

**24.** *Corning Glass, supra* note 22, 417 U.S. at 196–97, 94 S.Ct. at 2229; *Idaho Sheet Metal Works v. Wirtz,* 383 U.S. 190, 206, 86 S.Ct. 737, 747, 15 L.Ed.2d 694 (1966); *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Mitchell v. Kentucky Finance Co., Inc.,* 359 U.S. 290, 295, 79 S.Ct. 756, 759, 3 L.Ed.2d 815 (1959); *Walling v. General Industries Co.,* 330 U.S. 545, 547–548, 67 S.Ct. 883, 884, 91 L.Ed. 1088 (1947); *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945); *Wouters v. Martin County, Fla.,* 9 F.3d 924, 929, (11th Cir.1993), cert. denied, 513 U.S. 812, 115 S.Ct. 65, 130 L.Ed.2d 21 (1994); *Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 614 (2d Cir.1991), cert. denied, 506 U.S. 905, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992); *Donovan v. United Video, Inc.,* 725 F.2d 577, 581 (10th Cir.1984); *McLaughlin v. McGee Bros. Co., Inc.,* 681 F.Supp. 1117, 1133 (W.D.N.C.1988).

**25.** *Nichols, supra* note 2.

**26.** *Bohn v. Park City Group, Inc.,* 94 F.3d 1457, 1461 (10th Cir.1996); *Dalheim v. KDFW–TV,* 918 F.2d 1220, 1226 (5th Cir.1990).

claim for overtime pay.[27] The federal court considered six factors for measuring whether these deputies would fall within the Act's "personal staff" exemption.[28] Summary judgment for the Board rested on (a) the *employers' (counties) showing* that the sheriff and deputies had the type of relationship subject to the *personal staff exception* and (b) the *deputies' failure to demonstrate the existence of a material fact issue.*

¶ 16 Because in this case no FLSA-based claim had been pressed below, there was *no record* before the COCA to justify its *sua sponte* injection on appeal. If the deputies had desired to invoke the FLSA, they would have had to comply with the terms of that Act by filing a claim that would allege violations of the FLSA within two years (or three if a willful violation is implicated) of the accrual of their causes of action. We cannot, on this scant record, decide whether (a) these deputies stand exempted from the FLSA's

overtime protections as a matter of federal law and (b) their FLSA claims, if pressed, would be timely.

## V

¶ 17 **THE BREACH–OF–EMPLOYMENT–CONTRACT CLAIM UNDER STATE LAW**

### A.

### *The Parties' Arguments*

¶ 18 The deputies argue that the commissioners, sitting as a personnel board,[29] adopted a personnel policy manual,[30] which provides that county employees—including "law enforcement officers"—shall be compensated for overtime hours [31] and receive holiday work pay.[32] The deputies argue they are *law enforcement officers* within the meaning of the county's personnel policy. In

---

**27.** *Nichols, supra* note 2.

**28.** The court in *Nichols, supra* note 2 at 1110, relied on six *nonexhaustive* factors identified in *Teneyuca v. Bexar County,* 767 F.2d 148, 152 (5th Cir.1985), for determining whether a plaintiff is a member of an elected official's personal staff:

"(1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only the elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position."

**29.** The terms of § 1–1 of the handbook state in pertinent part:

"1–1 * * * The rules and regulations contained herein have been established by Carter County as approved by the *Carter County Personnel Board* of Carter County, Oklahoma." (Emphasis supplied.)

**30.** The deputies rely on 19 O.S. 1991 § 339(A)(8). Its terms provide:

"A. The county commissioners shall have power: * * *

8. To develop minimum personnel policies for the county with the approval of a majority of all county elected officers; * * *"
The 1993, 1994, 1995, and 1996 amendments to § 339 did not change the quoted text.

**31.** The deputies direct us to § 5.3 of the handbook. Its terms state in pertinent part:

"5–3 OVERTIME AND FLSA GUIDELINES
* * * *Overtime:* County employees who are not exempt, *law enforcement personnel* or emergency medical personnel, shall be entitled to overtime payment at the rate of 1.5 times their regular rate of pay for all hours worked in a work week in excess of 40 hours. The employee can accumulate up to 240 hours of compensatory time off in lieu of overtime payment. After the accrual of 240 hours of compensatory time, such employee must *thereafter be paid cash payment for overtime. Compensatory time off must be granted to an employee at a rate of 1.5 hours for each hour of overtime worked.* * * *
In the case of *law enforcement personnel,* overtime will be paid for hours worked in excess of 171 hours in the 28 day period. Such overtime will be paid at the rate of 1.5 times the employee's regular rate of pay, or awarded in the form of compensatory time off of 1.5 hours for each hour of overtime worked. *When a law enforcement employee accumulates 480 hours of compensatory time off, then such employee must be paid overtime thereafter in cash.* * * *"* (Emphasis supplied.)

**32.** For the handbook's holiday pay provisions, the deputies direct us to § 6.1 of the handbook. Its pertinent terms state:

"6–1 GENERAL STATEMENT
* * * THE FOLLOWING BENEFITS ARE PROVIDED FOR, FULL–TIME EMPLOYEES OF THE COUNTY:
(1) Paid Holidays * * *"

support of this notion, they direct us to the statutory scheme governing county officers, which (a) *classifies* the sheriff as an *enforcement officer* charged with keeping the peace,[33] (b) *designates* the sheriff and his deputies as the only "peace officers" for county government,[34] (c) *provides* that each county officer shall have one "first deputy" and (d) *classifies* all others as "second deputies."

¶ 19 These written policies, the deputies urge, which codified the prior practice of paying overtime wages to county employees, have become a part of the at-will employment arrangement. According to the deputies, when they accepted the county's offer (in the handbook) of compensation for overtime worked, the county became contractually bound to pay according to the promised wage regime. Because they are county employees as well as law enforcement officers, the deputies argue, they are entitled to the benefits promised in the county's personnel policy. Moreover, they submit that the county is bound by the doctrine of promissory estoppel and cannot now deny the overtime wages *after they have performed the work.*[35]

¶ 20 Although conceding that the deputy sheriffs are law enforcement officers *in a general sense,* the Board denies they are law enforcement officers within the meaning of the manual's overtime provisions. We are directed to evidentiary materials—the commissioners' affidavits—which show that these

county officials intended by their March 12, 1992 adoption of the personnel policy to pay overtime (or compensatory time off) to the sheriff's employees acting in the capacity of jail personnel, but not to deputy sheriffs.

¶ 21 The Board contends it never intended to create, by the text of the handbook, an employment contract that modified the at-will employment status or authorized overtime pay for deputy sheriffs.[36] Its intent, the Board argues, is clearly expressed in a disclaimer placed on the front of the handbook. The pertinent language states:

THESE POLICIES ARE NOT TO BE CONSIDERED AN EMPLOYMENT CONTRACT WITH ANY EMPLOYEE

The handbook is not a contract, the Board sums up, and cannot, as a matter of law, create any contractual obligations.

## B.

### The Handbook As The Basis Of An Implied Contract

¶ 22 The question pressed by the deputies regarding their alleged contract claim calls for an analysis of the principles that govern the legal efficacy of employee personnel handbooks (or manuals).

¶ 23 Oklahoma jurisprudence recognizes that an employee handbook may form the basis of an implied contract between an employer and its employees[37] if

---

**33.** The terms of 19 O.S.Supp. 1993 § 180.61 are:
"For purposes of fixing salaries under this act, county officers shall be grouped in the following classifications:
1. *Enforcement officers or those charged with enforcing the laws relating to public peace and safety:* the *county sheriff,* the county treasurer, the county clerk, the court clerk, the county assessor, and the members of the board of county commissioners, and
2. Other elective county officers." (Emphasis added.)

**34.** The terms of 19 O.S. 1991 § 516 are:
It shall be the duty of the sheriff, under-sheriffs and deputies to keep and preserve the peace of their respective counties, and to quiet and suppress all affrays, riots and unlawful assemblies and insurrections, for which purpose and for the service of process in civil and criminal cases, and in apprehending or securing any person for felony or breach of the peace, they and every constable may call to their aid such

person or persons of their county as they may deem necessary.

**35.** For this proposition, the deputies cite Restatement (Second) of Contracts, § 90 (1970). For the pertinent portions of § 90, see text at Part V(C) *infra.*

**36.** The Board directs us to § 1–2 of the handbook, which provides in part:
"1–2 POLICY PURPOSE
The policies contained herein are to be followed by the County Officials in administration of the County's personnel program. It is intended that these policies provide a working guide to County Officials and employees and serve as a basis for uniform employment practices in the County Service. * * *"

**37.** *Gilmore v. Enogex, Inc.,* 1994 OK 76, 878 P.2d 360, 368; *Hinson v. Cameron,* 1987 OK 49, 742 P.2d 549, 554–55; *Miller v. Independent School*

four traditional contract requirements exist: (1) competent parties, (2) consent, (3) a legal object and (4) consideration.[38] *Two* limitations on the scope of implied contracts *via* an employee handbook stand identified by extant caselaw: (1) the manual only alters the at-will relationship with respect to *accrued benefits* [39] and (2) the promises [40] in the employee manual must be in definite terms, not in the form of vague assurances.[41] Although the existence of an implied contract generally presents an issue of fact, if the alleged promises are nothing more than vague assurances the issue can be decided as a matter of law.[42]

This is so because in order to create an implied contract the promises must be definite.[43]

¶ 24 While an employer may deny (or disclaim) any intent to make the provisions of a personnel manual part of the employment relationship, the disclaimer must be clear.[44] An employer's conduct—i.e., representations and practices—which is inconsistent with its disclaimer may negate the disclaimer's effect.[45] *The efficacy of a disclaimer is generally a mixed question of law and of fact.*[46]

*Dist. No. 56 of Garfield County*, 1980 OK 19, 609 P.2d 756, 758–59; *see also Langdon v. Saga Corp.*, 1976 OK CIV APP 65, 569 P.2d 524, 527–528; *Williams v. Maremont Corp.*, 875 F.2d 1476, 1480 (10th Cir.1989).

**38.** 15 O.S. 1991 § 2; *Gilmore, supra* note 37 at 368.

**39.** In *Langdon, supra* note 37 at 527–28, the COCA holds that an employer's personnel manual providing for certain employee benefits (vacation and severance pay) created a contractual basis for a terminated employee's claim to those accrued benefits. The *policy statement* incorporated into the personnel manual was a contract defining the employment relationship during the period the policy was in effect. *Langdon* is consistent with *Miller, supra* note 37, where this court holds that a local board of education's policy statement was incorporated by implication into a teacher's employment contract. *Hinson, supra* note 37 at 555.

**40.** A promise is defined in Restatement (Second) of Contracts § 2, as:
"* * * a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made."

**41.** *Hinson, supra* note 37 at 554–555; *Gilmore, supra* note 37 at 368; *Hayes v. Eateries, Inc.*, 1995 OK 108, 905 P.2d 778, 783–784; see also *Williams, supra* note 37 at 1481.

**42.** *Hayes, supra* note 41 at 783; *Dupree v. United Parcel Service, Inc.*, 956 F.2d 219, 222 (10th Cir.1992).

**43.** *Hayes, supra* note 41 at 783; *see generally Krause v. Dresser Industries, Inc.*, 910 F.2d 674, 678–679 (10th Cir.1990).

**44.** *See, e.g., Avey v. Hillcrest Medical Center*, 1991 OK CIV APP 43, 815 P.2d 1215, 1217, and *Johnson v. Nasca*, 1990 OK CIV APP 87, 802 P.2d 1294, 1296 (the COCA acknowledged that a handbook's disclaimer of contractual rights must

be clear). In *Avey, supra* at 1217, the COCA affirmed summary judgment for the employer on the discharged employee's breach-of-contract claim, holding (a) there were no assurances of job security in the employee handbook, (b) the employer, by written disclaimers in both the employee handbook and the policy and procedural manual, denied any intention to form a contract of employment and (c) the disclaimers were "bold and clear" and the policies were "unambiguous." *See also Swanson v. Liquid Air Corp.*, 118 Wash.2d 512, 826 P.2d 664 (1992); *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 685 P.2d 1081, 1087–1088 (1984); *Payne v. Sunnyside Community Hosp.*, 78 Wash.App. 34, 894 P.2d 1379, 1382–1384 (1995); George L. Blum, Annot., *Effectiveness of Employer's Disclaimer of Representations in Personnel Manual or Employee Handbook Altering At-Will Employment Relationship*, 17 A.L.R.5th 1 (1994).

**45.** In *Johnson, supra* note 44 at 1296, the COCA reversed summary judgment for the employer, holding that the employee handbook—when viewed in conjunction with a pattern of practice indicating the employer's adoption and consistent use of the handbook's policies and (pretermination) procedures—may lead reasonable minds to differing conclusions about the existence of implied contractual rights to invoke the written procedures. *Swanson, supra* note 44 at 674–77; *Loffa v. Intel Corp.*, 153 Ariz. 539, 738 P.2d 1146, 1152 (1987); *Pond v. Devon Hotels, Ltd.*, 55 Ohio App.3d 268, 563 N.E.2d 738, 741–44 (1988) (fact questions preclude summary judgment where a disclaimer in an employee handbook is ambiguous and inconsistent with other representations in the manual). *See* Michael A. Chagares, *Utilization of the Disclaimer as an Effective Means to Define the Employment Relationship*, 17 HOFSTRA L.REV. 365, 392–93 (1989); *accord,* Practising Law Institute, Advanced Strategies in Employment Law, 485, 488 (1987).

**46.** *Johnson, supra* note 44 at 1297; *Swanson, supra* note 44 at 676–77. In *Zaccardi v. Zale Corp.*, 856 F.2d 1473, 1476 (10th Cir.1988), the

¶ 25 We cannot, on this record, decide the contractual efficacy of the handbook as a matter of law. While the manual states that its purpose is "to provide a working guide" to county officials and that the personnel policies do not represent an "employment contract," conflicting inferences may be drawn from other statements made in the same handbook. The manual's "overtime" provisions state that county employees "who are not exempt, law enforcement personnel or emergency medical personnel, *shall be entitled* to overtime payment." [47] Under the "general statement" section, the employer offers "paid holidays" for "full-time employees of the county." [48] The deputies' evidentiary materials indicate that other personnel in the sheriff's office have received overtime pay in accordance with these written personnel policies. Because they are *law enforcement personnel* and county employees, the deputies urge, they should receive the same benefits and stand on the same footing with others. The deputies' evidentiary materials raise a material fact question whether the *effectiveness* of the Board's written disclaimer is negated by inconsistent employer conduct.

¶ 26 If the disclaimer is found to be ineffective, there remains a material fact issue whether deputy sheriffs (a) are included in the category of *law enforcement personnel* eligible for overtime pay or (b) fall within the exempt classification that is excluded from these benefits. The manual *fails* to identify the county employees that fall within these categories. The Board's explanation (by affidavits attached to its summary judgment response) that deputy sheriffs were not intended to be included within the

manual's overtime pay classifications points out an ambiguity in the handbook that must be clarified by extrinsic evidence. It is not the function of summary adjudication process to afford a *trial by affidavit;* rather, it is to afford a method of summarily deciding some issues or terminating a case when there is nothing presented but a question of law.[49]

## C.

### The Handbook's Binding Effect As Declared Policy Under The Theory of Promissory Estoppel

¶ 27 The deputies argue that the county is liable for overtime pay under the theory of promissory estoppel. Promissory estoppel, which is grounded in the Restatement (Second) of Contracts § 90, has been incorporated into Oklahoma common law.[50] Section 90 of the Restatement states in part:

"(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires. * * *"

The elements necessary to establish promissory estoppel are: (1) a clear and unambiguous promise, (2) foreseeability by the promisor that the promisee would rely upon it, (3) reasonable reliance upon the promise to the promisee's detriment and (4) hardship or unfairness can be avoided only by the promise's enforcement.[51]

---

court, holding the contractual disclaimer insufficient for summary relief on a breach-of-contract claim, opined that a disclaimer "must be read by reference to the parties' 'norms of conduct and expectations founded upon them.'" *Zaccardi, supra* at 1476–77 (quoting from *Hillis v. Meister,* 82 N.M. 474, 483 P.2d 1314, 1317 (1971)).

**47.** Section 5–3 of the handbook, *supra* note 31 (emphasis added).

**48.** Section 6–1 of the handbook, *supra* note 32.

**49.** *Bowers v. Wimberly,* 1997 OK 24, 933 P.2d 312, 316; *Stuckey v. Young Explor. Co.,* 1978 OK 128, 586 P.2d 726, 730.

**50.** *Roxana Petroleum Co. v. Rice,* 109 Okl. 161, 235 P. 502, 506 (1924); *Bickerstaff v. Gregston,* 1979 OK CIV APP 64, 604 P.2d 382, 384.

**51.** *See, e.g., Rogers v. Town of Islip,* 230 A.D.2d 727, 646 N.Y.S.2d 158, 159 (1996); *Weiper v. W.A. Hill & Associates,* 104 Ohio App.3d 250, 661 N.E.2d 796, 803 (1995); *Payne Realty and Housing, Inc. v. First Sec. Bank of Livingston,* 256 Mont. 19, 844 P.2d 90, 95–96 (1993); *D'Ulisse–Cupo v. Board of Directors,* 202 Conn. 206, 520 A.2d 217, 221 (1987) (quoting § 90 of the Restatement (Second) of Contracts); *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 78 (2d Cir.1984).

¶ 28 According to the deputies, they relied on two separate promises in the manual which entitle them to relief under the theory of promissory estoppel—(a) § 5–3, which constitutes a promise that they would be given overtime compensation as law enforcement officers,[52] and (b) § 6–1, which promises that full-time county employees will receive compensation for holidays worked.[53] As discussed in Part V(B), *supra*, the manual is ambiguous. It neither specifies what categories of sheriff's employees are designated "law enforcement personnel" nor identifies those who are *exempted from* the overtime pay requirements.

¶ 29 We hold that whether the county is liable under the doctrine of promissory estoppel—*i.e.*, on the notion of the deputies' detrimental reliance on the personnel manual's provision for overtime or holiday pay (or compensatory time off)—tenders a material fact in dispute. It is yet to be determined. An examination of the evidentiary materials submitted in opposition to the county's quest for summary adjudication reveals that opposite inferences may be drawn from the facts presented.

## VI

¶ 30 **THE PRUDENTIAL BAR OF RESTRAINT COMMANDS THAT THE CONSTITUTIONAL ISSUE BEFORE US NOT BE RESOLVED IN ADVANCE OF STRICT NECESSITY**

¶ 31 The deputies press for the first time on appeal that the county's *disparate application* of its adopted personnel policies governing overtime and holiday pay to one group of law enforcement officers (deputy sheriffs) but not to others (*i.e.*, jailers, dispatchers) within that classification is arbitrary and capricious. The county's policy *as*

*written*, they argue, was not intended to distinguish between groups of law enforcement officers.

¶ 32 We do not reach, either for settlement or discussion, the equal protection clause's impact. When, as here, legal relief clearly is affordable upon alternative grounds, consideration of constitutional challenges is inappropriate in light of our self-erected "prudential bar" of restraint. Constitutional questions should not be reached in advance of strict necessity.[54]

## SUMMARY

¶ 33 Because the deputy sheriffs had not pressed below a FLSA-based claim, that issue stood before the COCA *entirely unsupported* by the record and could not hence be injected on appeal *sua sponte*. It is not possible to declare, on this record, that these deputy sheriffs are excluded from the Act's overtime protection as a matter of law.

¶ 34 Whether—either on application of an implied-contract or of promissory-estoppel theory—the personnel policy handbook creates a binding obligation on the county to pay the deputy sheriffs for overtime and holiday hours worked presents a question for an evaluative determination of the trier. The record reveals disputed material facts as well as undisputed material facts from which conflicting inferences may be drawn.

¶ 35 We express no opinion on the Board's liability for FLSA– or contract-based theories. The cause must be remanded for a nisi prius resolution of all untried issues tendered or to be tendered. The summary judgment for the county cannot stand. When on the judgment's reversal a cause is remanded, it returns to the trial court as if it

52. Section 5–3 of the handbook, *supra* note 31.

53. Section 6–1 of the handbook, *supra* note 32.

54. *In re Snyder*, 472 U.S. 634, 642–643, 105 S.Ct. 2874, 2880, 86 L.Ed.2d 504 (1985); *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 501–502, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985); *I.N.S. v. Chadha*, 462 U.S. 919, 936–37, 103 S.Ct. 2764, 2776, 77 L.Ed.2d 317 (1983); *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). *See also Jackson*, *supra* note 9 at 771; *Wright v. Grove Sun Newspaper Co.*, 1994 OK 37, 873 P.2d 983, 990; *In re Initiative Petition No. 347 State Question No. 639*, 1991 OK 55, 813 P.2d 1019, 1037 (Opala, C.J., concurring); *Smith v. Westinghouse Elec. Corp.*, 1987 OK 3, 732 P.2d 466, 467 n. 3; *Schwartz v. Diehl*, 1977 OK 115, 568 P.2d 280, 283; *Dablemont v. State*,

had never been decided, save only for the "settled law" of the case.[55]

¶ 36 On certiorari granted upon the Board's petition, the Court of Civil Appeals' opinion is vacated, the trial court's summary judgment reversed and the cause remanded for further proceedings consistent with today's pronouncement.

¶ 37 KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER, HARGRAVE and ALMA WILSON, JJ., concur.

SIMMS and WATT, JJ., dissent.

SIMMS, Justice, dissenting:

¶ 1 I dissent. I would affirm the trial court's summary judgment ruling in favor of the county on its defense to the deputies' contractual claims. This ruling was affirmed by the Court of Civil Appeals and certiorari has not been sought to challenge it. Contrary to the majority's view, this is not a situation like *Hough v. Leonard*, 1993 OK 112, 867 P.2d 438, where an alleged error was left unaddressed by the Court of Appeals although it was properly preserved and briefed on appeal. Here, the alleged error was not ignored or left unanswered. As is shown by the majority's excerpt, *ante*, fn. 4, from the Court of Civil Appeals' opinion, the trial court's ruling on the challenge to the contractual theory urged by the deputies was considered and determined by the Court of Appeals. While the treatment was admittedly cursory, the Court of Civil Appeals nonetheless decided the issue presented. It ruled in the county's favor and affirmed the trial court's resolution of that issue. But the Court of Appeals then gratuitously considered another issue—the application of the Fair Labor Standards Act to the claim of plaintiffs—which had not been urged or briefed by the parties and found it was determinative and required reversal of the trial court's judgment.

¶ 2 The Court of Appeals' unsolicited determination of the Fair Labor Standards Act's application to this case is, as the majority finds, plain error. It is, however, the only issue properly before us. In the absence of an effort by the deputies to obtain certiorari review from this court on the issue of the contractual claims, we should affirm the trial court's summary judgment in favor of the county.

I am authorized to state that Justice WATT joins me in the views expressed herein.

*Dept. of Public Safety*, 1975 OK 162, 543 P.2d 563, 564.

**55.** *Nelson, supra* note 10 at 1376–1377; *Fent, supra* note 10 at 134; *Thomas, supra* note 10 at 428; *Dyke, supra* note 10 at 304; *Parker, supra* note 10 at 682; *Seymour, supra* note 10 at 512–513.