2001 OK CIV APP 144

**Lynn F. GARST, as Guardian ad litem for Patty J. Garst, Plaintiff/Appellant,**

v.

**UNIVERSITY OF OKLAHOMA and University of Oklahoma Health Sciences Center, Defendants/Appellees.**

No. 96,614.

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 19, 2001.

Aletia Haynes Timmons, Abel, Musser, Sokolosky, Mares & Kouri, Oklahoma City, OK, for Plaintiff/Appellant.

Fred R. Gipson, Oklahoma City, OK, and Joseph Harroz, Jr., Norman, Oklahoma, for Defendants/Appellees.

## OPINION

CARL B. JONES, Judge.

¶ 1 Patty J. Garst, Plaintiff/Appellant, is a former employee of the University of Oklahoma at the University's Health Sciences Center.[1] During her employment, Garst purchased through the University a long term disability insurance policy from ITT Hartford Group, Inc. The monthly premiums were paid through payroll deductions from the University. On or about March of 1996,

---

1. The proper party defendant in this action is the State of Oklahoma *ex rel.* Board of Regents of the University of Oklahoma. Okla. Const. Art. XIII, § 8; 70 O.S. 1991 § 3301 *et seq.* The University of Oklahoma Health Sciences Center is an agency of the University of Oklahoma. 70 O.S. 1991 § 3103.

Garst applied for long term disability benefits through an employee benefits representative for the University. Garst alleges that the University employee erroneously informed her that if she accepted any benefits from the Oklahoma Teacher's Retirement System ("OTRS"), Hartford would reduce her long term disability payments by an amount equal to the OTRS payments. Garst's Hartford policy does not include any such reduction for OTRS benefits. (A 1994–95 benefits guide issued by the University contained the same erroneous information, although it is not clear whether Garst knew of the printed misstatements in 1996). Garst claims that she did not file for her OTRS retirement benefits at that time in reliance on the University's misrepresentation. Garst subsequently discovered, after requesting and obtaining a copy of her disability policy from Hartford, that she could have been receiving her OTRS retirement income without sustaining any reduction in her disability benefits.

¶ 2 On August 14, 2000, Garst filed a notice of tort claim pursuant to the Governmental Tort Claims Act, 51 O.S. 1991 § 151 *et seq.* Following the denial of her claim by operation of law, 51 O.S. Supp. 1995 § 157(A), Garst filed the instant action in the District Court of Oklahoma County. In her petition, Garst asserted four causes of action: (1) breach of contract, (2) negligent misrepresentation, (3) intentional misrepresentation and (4) promissory estoppel. The University moved to dismiss the petition, asserting that no contract existed, that any claim for breach of contract is time barred, and that the University is immune from liability for Garst's three other causes of action. The district court entered its order of dismissal on June 26, 2001, and Garst appealed.

### I. Standard of Review

■ ¶ 3 The standard of review on appeal from a motion to dismiss is *de novo. Miller v. Miller,* 1998 OK 24, ¶ 15, 956 P.2d 887, 894. The purpose of a motion to dismiss is to test the law that governs the claims, not the underlying facts. *Id.* "When reviewing a motion to dismiss, all of the challenged pleading's allegations together with reasonable inferences which may be drawn from them are taken in favor of the nonmoving party. The appropriate question in testing the sufficiency of the allegations is whether relief is possible under any set of facts that could be established consistent with the allegations." *Boren v. Thompson & Associates,* 2000 OK 3, ¶ 25, 999 P.2d 438, 447 (footnotes omitted).

### II. Breach of Contract

■ ¶ 4 Garst contends the University breached an express written contract when its representative misinformed her regarding the contents of her Hartford disability insurance policy. The "written" contract to which Garst refers is a series of excerpts taken from various employee benefits guides distributed by the University over the years to its employees, many of which were issued after Garst left the University. Garst's first argument is that the University breached a purported contract "to provide her her vested employee benefits which she was entitled to receive based on long term disability and her entitlement to teachers retirement benefits as a result of her employment." We disagree.

¶ 5 The University offered Garst a disability insurance policy through Hartford and a retirement package through OTRS, both of which she accepted and paid for via payroll deductions. Upon suffering a disability, Garst sought and received disability benefits from Hartford. However, she opted not to seek retirement benefits from OTRS at that time based, she claims, on the University's erroneous information. It is important to note that the University did not prevent Garst from obtaining her retirement benefits from OTRS. Garst had available all benefits to which she was entitled. The University's alleged oral misrepresentation of Garst's disability policy does not constitute a breach of any contract to provide her with disability insurance or retirement benefits.

■ ¶ 6 The essence of Garst's other breach of contract arguments is that the employee benefit guides constitute evidence that the University undertook an obligation to provide its employees with error-free benefits assistance. She asserts that the University breached such obligation by giving

her erroneous information. Again, we disagree. We have no doubt that the benefits guides at issue were intended to accurately set forth a description of benefits offered through the University. However, even if the benefits guides could be construed as a written contract, they contain no promises of error-free assistance.

¶ 7 The University urges that, at best, the guides could only be said to form the basis of an implied contract claim, citing *Russell v. Bd. of County Comm'rs, Carter County*, 1997 OK 80, 952 P.2d 492. We find that even *Russell* does not support Garst's position. The Court in *Russell* held that employee handbooks may form the basis of an implied contract between an employer and its employees if traditional contract requirements exist. *Id.* 1997 OK 80 at ¶ 23, 952 P.2d at 501–2. However, one of the limitations on the scope of such implied contracts is that "the promises in the employee manual must be in definite terms, not in the form of vague assurances." *Id.* (footnotes omitted). No such definite terms are found in the benefits guides at issue here.

¶ 8 "Although the existence of an implied contract generally presents an issue of fact, if the alleged promises are nothing more than vague assurances the issue can be decided as a matter of law. This is so because in order to create an implied contract the promises must be definite." *Id.* (footnotes omitted). Even if we considered all of the benefits guides, including those issued *after* Garst left the University's employ, we would reject her contention. We hold, as a matter of law, that the guides do not form the basis for an implied contract for the University to offer error-free benefits assistance to its employees.[2]

### III. Negligent Misrepresentation

¶ 9 Garst asserts that all of her causes of action sound in contract and not in tort. Therefore, she argues, the Governmental Tort Claims Act does not apply to her claims of misrepresentation and promissory

estoppel. Garst advances this argument despite the fact that she originally filed her claim under the auspices of the Act. Initially, we note that parties may not avoid the immunity provided a state entity by the Act "merely by recasting their tort theory of liability into a contractually-based one." *Fehring v. State Ins. Fund*, 2001 OK 11, ¶ 30, 19 P.3d 276, 286. Second, we have already determined that the University was under no contractual obligation to provide error-free benefits assistance to its employees. Accordingly, we address all Garst's remaining claims under the Act. The Act specifically provides that "the state or a political subdivision shall not be liable if a loss or claim results from ... [m]isrepresentation, if unintentional; ..." 51 O.S. Supp. 1999 § 155(17). According to the plain language of the Act and taking Garst's allegations as true, the University is immune from liability for unintentionally misrepresenting the terms of Garst's disability policy.

### IV. Intentional Misrepresentation

¶ 10 In support of her claim that the University intentionally misrepresented the terms of her policy, Garst directs our attention to the University's employee benefits guide for 1994–95. As previously stated, the 1994–95 version of the guide included the same erroneous information allegedly verbally given Garst regarding her OTRS retirement benefits. She then points to the fact that the University apparently discovered the error and corrected it in subsequent guides. The University's failure to then personally inform Garst of the mistake included in the 1994–95 guide, she claims, amounted to intentional misrepresentation of the terms of her policy.

¶ 11 Assuming arguendo that these facts amounted to an intentional misrepresentation on the part of the University, we find that the University is immune from liability therefrom. Under the Act, the University is liable only for those torts committed by "its employees acting within the scope

---

**2.** Assuming arguendo that the guides did form the basis of an implied contract, we find that Garst's action for breach of contract is time barred because it was not brought within three

years as required by 12 O.S. Supp. 1996 § 95(2). Further, we find no Oklahoma authority that would sanction "tolling" of the statute of limitations under the facts of this case.

of their employment...." 51 O.S. 1991 § 153(A). The term "scope of employment" is defined as the "performance by an employee acting in good faith within the duties of his [or her] office or employment...." Without citation of authority, Garst argues that the tort of intentional misrepresentation can be committed by a state employee while he or she is acting within the scope of employment. We disagree. One who intentionally tries to deceive another does not act in good faith. *See Patel v. OMH Medical Ctr., Inc.,* 1999 OK 33, ¶ 34, 987 P.2d 1185, 1199 (defining actual fraud as "the intentional misrepresentation or concealment of a material fact which substantially affects another person").

### V. Promissory Estoppel

¶ 12 Four elements are necessary to establish a cause of action for promissory estoppel:

> (1) a clear and unambiguous promise, (2) foreseeability by the promisor that the promisee would rely upon it, (3) reasonable reliance upon the promise to the promisee's detriment and (4) hardship or unfairness can be avoided only by the promise's enforcement.

*Russell,* 1997 OK 80 at ¶ 27, 952 P.2d at 503. Garst asserts (1) that the University clearly promised her disability insurance and retirement benefits, (2) that it was foreseeable she would rely on the University's erroneous representation regarding her disability policy, (3) that she relied upon the erroneous information to her detriment and (4) hardship and unfairness can only be avoided by the University "restoring the benefits to which [she] was due."

¶ 13 The fallacy of Garst's argument was illustrated in Part II of this Opinion above: The University has fulfilled its obligation to provide Garst with disability insurance and retirement benefits. As was true with her other causes of action, the gist of Garst's promissory estoppel claim is that the University misrepresented the terms of her disability insurance policy. As previously discussed, however, no contract existed that required the University to give its employees error-free benefits assistance and the University is immune from liability under the Act for either the negligent or intentional misrepresentations of its agents.

### VI. CONCLUSION

¶ 14 On *de novo* review, we find that no relief is possible under any set of facts that could be established consistent with the allegations of Garst's petition. There existed no contract requiring the University to provide error-free benefits assistance to its employees and the University is immune from liability for either the negligent or intentional misrepresentations of its agents. Furthermore, the University fulfilled its obligation to provide Garst with disability insurance through Hartford and retirement benefits through OTRS. Thus, we hold that the trial court properly dismissed Garst's petition.

¶ 15 AFFIRMED.

¶ 16 ADAMS, P.J., and JOPLIN, J., concur.