2006 OK CIV APP 115

**Rhonda Allen NICHOLS, Plaintiff/Appellant,**

v.

**PRAY, WALKER, JACKMAN, WILLIAMSON & MARLER, A PROFESSIONAL CORPORATION, and Sandra Bjork, an individual, Defendants/Appellees.**

No. 102069.

Court of Civil Appeals of Oklahoma, Division No. 3.

June 2, 2006.

Certiorari Denied Sept. 18, 2006.

Roy D. Tucker, Coulter Tucker, P.C., Tulsa, OK, for Plaintiff/Appellant.

Thomas M. Askew, Wm. Gregory James, John L. Randolph, Jr., Pray, Walker, Jackman, Williamson & Marler, Tulsa, OK, for Defendants/Appellees.

KENNETH L. BUETTNER, Chief Judge.

¶ 1 Rhonda Nichols worked as a file clerk for Pray, Walker, Jackman, Willliamson & Marler for twenty-three years before she was let go for economic reasons. Nichols

claimed that when she subsequently looked for employment and potential employers would call to verify her past employment, that Pray, Walker did not accept or return the calls, or advised potential employers that nothing would be said. Nichols claimed that without verification of her previous employment, she was not able to obtain full time employment. She sued Pray, Walker and its Office Administrator, Sandra Bjork (collectively Law Firm) on several causes of action, ultimately limited to intentional misrepresentation and blacklisting. The trial court granted Law Firm's Motion to Dismiss. We affirm.

¶ 2 In *Fanning v. Brown*, 2004 OK 7, ¶ 4, 85 P.3d 841, 844, the Oklahoma Supreme Court stated the standard of review with respect to motions to dismiss:

The standard of review for an order dismissing a case for failure to state a claim upon which relief can be granted is *de novo* and involves consideration of whether a plaintiff's petition is legally sufficient. [citation omitted.] When reviewing a motion to dismiss, the court must take as true all of the challenged pleading's allegations together with all reasonable inferences which may be drawn from them. [citation omitted.] "A pleading must not be dismissed for failure to state a legally cognizable claim *unless* the allegations indicate *beyond any doubt* that the litigant can prove no set of facts which would entitle him to relief." *Frazier v. Bryan Mem. Hosp.*, 1989 OK 73, ¶ 13, 775 P.2d 281, 287. (emphasis in original). Further, the burden to show the legal insufficiency of the petition is on the party moving for dismissal and a motion made under 12 O.S.2001 § 2012 (B)(6) must separately state each omission or defect in the petition; if it does

not, the motion shall be denied without a hearing. [citation omitted.] Motions to dismiss are usually viewed with disfavor under this liberal standard. [citation omitted.] The burden of demonstrating a petition's insufficiency is not a light one. [citation omitted.]

¶ 3 These principles guide us as we review Law Firm's Motion to Dismiss. The initial Petition included claims for Breach of Contract, Intentional Misrepresentation, Detrimental Reliance, Intentional Interference with Business Relations, and Intentional Infliction of Emotional Distress. Law Firm removed the action to federal court because some of the claims dealt with an employee benefit plan. Upon remand of the action to state court, Nichols filed an Amended and Restated Petition alleging claims of Breach of Duty to Provide Information Regarding Former Employee In Good Faith, Malicious Interference With Business Relations, Intentional Misrepresentation, Intentional Infliction of Emotional Distress, and Blacklisting.

¶ 4 In its first motion to dismiss pursuant to 12 O.S.2001 § 2012, filed December 16, 2004, Law Firm argued that Nichols' first (Breach of Duty) and third (Intentional Misrepresentation) causes of action were not cognizable in Oklahoma. Law Firm argued that no statute or case law imposed a duty to provide information on former employees. It cited 40 O.S.2001 § 61 in support of its argument.[1] Section 61 provides qualified immunity to an employer who decides to provide performance information to a prospective employer with the former employee's consent or request. It is alleged that Law Firm disclosed no information.

¶ 5 Nichols responded that § 61 did not apply because her request was for verification of employment, not a performance evalu-

1. 40 O.S.2001 § 61 (A): An employer may disclose information about a current or former employee's job performance to a prospective employer of the current or former employee upon request of the prospective employer and with consent of the current or former employee, or upon request of the current or former employee. A state agency, as defined in Section 840–2.5 of Title 74 of the Oklahoma Statutes, may disclose information regarding a current or former employee's job performance to another state agency which is a prospective employer of the current or former employee without the employee's consent. The employer is presumed to be acting in good faith, unless lack of good faith is shown by a preponderance of the evidence. The current or former employer shall be immune from civil liability for the disclosure or any consequences of such disclosure unless the presumption of good faith is rebutted upon a showing that the information disclosed by the current or former employer was false and the employer providing the information had knowledge of its falsity or acted with malice or reckless disregard for the truth.

**910**

ation. Nichols acknowledged the absence of any Oklahoma case law that would support a duty to provide employment verification, but argued a negligence analysis would support such a duty. She cited *Missouri–Kansas–Texas Railroad v. Ingram*, 322 F.2d 286 (10th Cir.1963) in which a mail clerk threw a bag full of mail from a slowly moving train without regard for people standing on the platform, who were consequently injured. Nichols argued that Law Firm knew or should have known that she would be seeking employment, knew that potential employers would be seeking verification of her employment history, and its refusal to verify her dates of employment violated its duty of ordinary care not to injure others.

¶ 6 With respect to Nichols' third claim, Intentional Misrepresentation, Law Firm argued:

> Like Plaintiff's first cause of action, the third cause of action for intentional misrepresentation is not recognized in Oklahoma law. Of course, while misrepresentation is clearly an element in certain cognizable legal theories, it is not a recoverable legal theory in itself. Again, given the lack of any appropriate legal basis for the Plaintiff's third cause of action, it must be dismissed.

¶ 7 Nichols' response cited no Oklahoma authority to support a cause of action of intentional misrepresentation.

¶ 8 Law Firm then presented arguments for dismissing the second claim (Malicious Interference), fourth claim (Intentional Infliction of Emotional Distress), and fifth claim (Blacklisting). Nichols' Response addressed Law Firm's arguments.

■ ¶ 9 The Motion to Dismiss was argued February 1, 2005. The trial court granted dismissal of the first, second, and fourth claims without leave to amend. Nichols was granted leave to amend her petition with respect to the third and fifth claims.[2] Nichols filed her Second Amended and Re-

stated Petition February 11, 2005. She reasserted the Intentional Misrepresentation and Blacklisting claims.[3]

■ ¶ 10 In its Renewed Motion to Dismiss, Law Firm argued that no cause of action for intentional misrepresentation existed in Oklahoma, and Nichols could not allege the existence of any duty Law Firm owed her. Law Firm also argued that a claim of blacklisting under 40 O.S.2001 § 172 required an affirmative act.

¶ 11 In her Response to the Renewed Motion to Dismiss, Nichols concedes the lack of specific Oklahoma authority for a cause of action for intentional misrepresentation, but cites *Garst v. University of Oklahoma*, 2001 OK CIV APP 144, 38 P.3d 927, claiming the cause of action has been adopted by implication. We do not read *Garst* to have created or recognized the tort of intentional misrepresentation. Rather, the court found that even if there was intentional misrepresentation on the part of a university employee, the university was entitled to immunity under the Governmental Tort Claims Act, 51 O.S. 1991 § 151 *et seq.* The opinion then goes on to cite *Patel v. OMH Medical Center, Inc.*, 1999 OK 33, ¶ 34, 987 P.2d 1185, 1199, for the definition of fraud. There was no holding that a cause of action of intentional misrepresentation was cognizable in Oklahoma separate from a fraud cause of action.

¶ 12 Nichols also cited *Bank of Commerce v. Hoyt*, 277 B.R. 121 (Bkrtcy.N.D.Okla.2002) claiming the duty to speak may arise from speaking in the past regarding other former employees. However, even the quotation used by Nichols says a duty to speak may be found based on a fiduciary or similar duty, or from a partial disclosure, or a statute. The court then cited 76 O.S. § 3 which defines the Oklahoma tort of deceit:

> A deceit, within the meaning of the last section, is either;

---

2. Nichols requested leave to amend her first claim which was based on an affirmative duty to verify employment. The trial court denied the request on the ground of futility.

3. Filing an amended petition constitutes an abandonment of previous petitions and any allegations not made part of the amended petition. *Edwards v. Andrews, Davis, Legg, Milsten & Murrah, Inc.*, 1982 OK 72, 650 P.2d 857; *Scott v. Price*, 247 P. 103, 123 Okl. 172 (1926).

1. The suggestion, as a fact of that which is not true by one who does not believe it to be true.

2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true.

3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

4. A promise, made without any intention of performing.

¶ 13 Nichols has failed to allege that Law Firm made a misrepresentation with respect to her. Nor has she cited any authority that requires an employer to verify employment of a former employee. Absent a duty to speak, there can be no liability for silence. Nor can an employer's past practice establish a legal duty to speak which would create a tort under Oklahoma law, especially where the employer has complete discretion to change the practice.

¶ 14 Nichols also claimed that Law Firm blacklisted her by not verifying employment. Blacklisting is statutorily defined at 40 O.S. 2001 § 172 :

No firm, corporation or individual shall blacklist or require a letter of relinquishment, or publish, or cause to be published, or blacklisted, any employee, mechanic or laborer, discharged from or voluntarily leaving the service of such company, corporation or individual, with intent and for the purpose of preventing such employee, mechanic or laborer, from engaging in or securing similar or other employment from any other corporation, company or individual.

¶ 15 Law Firm argues that Nichols' failure to allege any affirmative action on its part is fatal, as well as her failure to allege a "condition precedent" of a criminal conviction despite her opportunity to amend her petition. With respect to any conditions precedent, 40 O.S.2001 § 173, first adopted in 1910, gives Oklahomans who have been blacklisted the right to seek recovery for damages.

Any person, firm or corporation violating the preceding section shall be fined in any sum not less than One Hundred Dollar ($100.00), nor more than Five Hundred Dollars ($500.00), and any person so blacklisted shall have a right of action to recover damages.

¶ 16 Law Firm did not provide any Oklahoma law to support its position that a criminal conviction was required as a condition precedent to a civil action. There is no indication in § 173 that a criminal conviction must precede a civil action.

■ ¶ 17 However, Law Firm's second argument is well taken. The only case interpreting Oklahoma's blacklisting statute is *State v. Dabney*, 77 Okla. Cr. 331, 141 P.2d 303 (1943). Dabney was charged with misdemeanor blacklisting when his employee Gray voluntarily left his employment. Dabney felt Gray was a troublemaker and a spy for the Better Business Bureau. When she secured employment, he wrote a letter to her new employer about the experience, closing with:

This girl kept trouble brewing in the organization practically all of the time that she was here and while I have no intentions of inferring that she may be a trouble maker in your organization, I realize that I was fortunate to have had so many loyal persons here.

Trusting that you will receive this letter in the spirit in which it was written, I am, . . . .

¶ 18 The *Dabney* Court first questioned whether the term "blacklist" was too indefinite to show with reasonable certainty what acts or omissions were to be punished. The Court referred to Black's Law Dictionary, 3rd Ed. defining "blacklist" as:

A list of persons marked out for special avoidance, antagonism, or enmity on the part of those who prepare the list or those among whom it is intended to circulate; as where a trades-union 'blacklists' workmen who refuse to conform to its rules, or where a list of insolvent or untrustworthy persons is published by commercial agency or mercantile association.

*Id.* at 307.

¶ 19 The Court also cited Webster's: "A list of individuals regarded as suspect or as

deserving of censure or adverse discrimination." *Id.*

¶ 20 It is clear that the term "blacklist" used in the 1910 statute, as interpreted in *Dabney* in 1943, had a "well-defined meaning" which included an affirmative act.[4] Nichols' effort to modify the law to include silence is unavailing. It would open up a criminal statute to substantial claims of indefiniteness. If a court were to interpret § 172 to create a duty to speak, what would the parameters of the duty be?[5] How would an employer know, from reading the blacklisting statute, that a failure to verify employment would subject it to criminal and civil penalties?[6]

¶ 21 Which brings us back to 40 O.S.2001 § 61, the qualified immunity statute. Qualified immunity is extended to employers who give *job performance information* to a prospective employer, but only where the employee has requested or consented to furnishing the information. It is clear that under § 61 an employee cannot require or force the employer to provide job performance information. That is, an employer could issue a "no comment" or remain silent. An employer on notice of this section would have no reason to believe that silence or "no comment" in an employment verification setting could give rise to criminal sanctions under §§ 172, 173.[7]

## CONCLUSION

¶ 22 Nichols claims that an employer's failure to verify employment constitutes intentional misrepresentation and/or blacklisting. We have found no Oklahoma authority recognizing a tort of intentional misrepresentation separate from the torts of deceit or fraud. Both of these torts require a duty to speak before silence can be considered actionable. Likewise, the offense of blacklisting requires affirmative conduct, not mere silence.

¶ 23 We are persuaded by other provisions of Oklahoma law, e.g. verification of employment by public bodies, and qualified immunity for consented job performance information, that Oklahoma has not imposed a duty on employers to verify employment. While such a refusal (which has been denied in this case, but is accepted in a motion to dismiss procedure) may be boorish, petty, and unfair, it is not actionable under Nichols' pleaded theories.

¶ 24 The Order dismissing Nichols' claims is AFFIRMED.

ADAMS, J., concurs.

MITCHELL, P.J., concurring.

¶ 25 This case illustrates the need for legislation to address Appellant's dilemma. The determination that in Oklahoma there is no duty on the part of a former employer to *merely confirm* the fact of one's previous employment leaves that former employee

4. Nichols concedes that "intentional conduct is the linchpin of liability" under § 172. However, silence cannot be such intentional conduct absent a duty to speak.

5. See for example *St. Louis Southwestern Ry. Co. Of Texas v. Hixon*, 126 S.W. 338 (Tex.Civ.App. 1910). Texas passed a law in 1907 to help prevent blacklisting. It required certain corporations to provide a "service letter" to discharged employees with the true reason for the discharge, upon written request of the employee. The legislature recognized that failing to give the true reason for the discharge could amount to blacklisting and prevent the employee from procuring employment. The statute provided a penalty for failing to supply the service letter.

In discussing a 1888 blacklisting law in Iowa, the court held the "blacklisting law did not impose an affirmative duty on [employer] to provide information." *Glenn v. Diabetes Treatment Centers of America*, 116 F.Supp.2d 1098, 1105

(S.D.Iowa 2000). The court indicated that blacklisting statutes came about in the late nineteenth century in response to the practice of certain railroads of blacklisting union organizers and union members. As a criminal statute, it would be strictly construed, and observed that it would be unlikely for the Iowa Supreme Court, after all these years, to give an expansive construction to the act. *Id.* at 1103–1104.

6. A penal statute must be so clearly expressed that any ordinary person can determine in advance what he may and may not do under the act. *Powers v. Owen*, 419 P.2d 277, 279 (Okla. Crim.App.1966).

7. Compare to 51 O.S.2001 § 24A.7 (B)(3) which affirmatively requires a public body to allow inspection and copying of personnel records showing "The dates of employment, title, or position." We have not been cited any similar authority for private employers.

vulnerable to, and perhaps even helpless against, petty, spiteful, mean and unprofessional conduct as has been alleged here. It is not farfetched at all that the employee's ability to secure future employment is made significantly more difficult, if not impossible, by such conduct. Actions that deter or discourage employment without good reason are certainly against public policy. Oklahoma should address this problem legislatively. *See* Deborah A. Ballam, *Employment References–Speak No Evil, Hear No Evil: A Proposal for Meaningful Reform,* 39 Am. Bus. L.J. 44, 455–65 (2002); *and* Connie Swemba, *"To Tell the Truth, The Whole Truth, and Nothing But the Truth:" Employment Refer-* *ences and Tort Liability,* 33 U. Tol. L.Rev. 847, 861–67 (2002); *see also* Kan. Stat. Ann. § 44–119a (providing absolute immunity from civil liability to employers who disclose the following information about current or former employees to prospective employers: (1) date of employment; (2) pay level; (3) job description and duties; and (4) wage history).