Annabel **DOBBS**, Individually and as Personal Representative of the Estate of Terry Dobbs, Deceased, Plaintiff,

v.

**WYETH PHARMACEUTICALS,** Defendant.

Case No. CIV–04–1762–F.

United States District Court, W.D. Oklahoma.

March 16, 2012.

Arnold Anderson Vickery, Paul F. Waldner, III, Vickery & Waldner LLP, Houston, TX, Tia J. Goodman, Law Office of Tia J. Goodman PLLC, Oklahoma City, OK, for Plaintiff.

Andrew C.S. Efaw, Sean G. Saxon, Wheeler Trigg & O'Donnell, Denver, CO, Douglas M. Todd, Thomas G. Wolfe, Phillips Murrah PC, Oklahoma City, OK, for Defendant.

## ORDER

STEPHEN P. FRIOT, District Judge.

Before the Court is Defendant's motion for summary judgment [Doc. No. 289], seeking judgment on Plaintiff's sole remaining claim based on a fraudulent misrepresentation. Plaintiff timely responded, and Defendant filed a reply.

### I. Background:

Plaintiff brought this action to recover damages resulting from the death of her husband, Terry Dobbs ("Mr. Dobbs"), who committed suicide in December, 2002. Plaintiff alleges that Mr. Dobbs, who had been diagnosed with major depression, committed suicide as a result of taking Effexor, a prescription antidepressant drug manufactured by Defendant. Plaintiff alleges that Defendant is liable under Oklahoma common law for failing to adequately warn that Effexor could cause suicide; she asserts tort claims based on strict liability for failure to warn, negligent failure to warn, and misrepresentation.

In a June 13, 2011 Order, 797 F.Supp.2d 1264 (W.D.Okla.2011) [Doc. No. 279], the Court granted summary judgment in favor of Defendant on Plaintiff's claims based on a failure to warn, finding those state law claims preempted by federal law. As a result, the only claim remaining for adjudication seeks to hold Defendant liable on a theory of misrepresentation. In its motion, Defendant argues the undisputed material facts establish that Plaintiff cannot, as a matter of law, prevail on this claim because she cannot prove the essential elements of the claim. Plaintiff contends there are undisputed material facts precluding summary judgment.[1]

1. LCvR56.1 (c) states as follows:

"The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's facts that is disputed. All material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party."

Plaintiff's response to Wyeth's motion for summary judgment does not "begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist." Instead, the factual portion of plaintiffs' response contains plaintiffs' statement of "Additional Undisputed Material Facts." Doc. no. 290, at 2–6. It does not appear that plaintiff takes issue with Wyeth's statement of undisputed facts. Wyeth's statement of undisputed facts is uncontroverted and is consequently taken as true. See, e.g. Bennett v. Fuller, 2008 WL 2987173, at *3 (N.D.Okla.2008) (applying Northern District version of LCvR56.1). Although all of the facts in Wyeth's statement are taken as true, the facts which are dispositive are the facts set forth in this order. (The court also cannot but note that plaintiff's re-

## II. Summary judgment standard:

Summary judgment shall be granted where the undisputed material facts establish that one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The purpose of a summary judgment motion is to assess whether a trial is necessary." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir.2007). "In other words, there 'must be evidence on which the jury could reasonably find for the plaintiff.' " *Id.*

To avoid summary judgment, a plaintiff must present more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict for the non-moving party." *Id.* The facts in the record and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007); *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). However, to establish the existence of a "genuine" material factual dispute, the nonmoving party must present evidence to show more than "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Where the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. In this regard, it is not the responsibility of the summary judgment movant to disprove the plaintiff's claim; rather, the movant need only point to "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998). The burden then shifts to the nonmovant to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citations omitted).

In opposing a summary judgment motion, a plaintiff cannot rely on the allegations in her complaint, her personal beliefs, or conclusory assertions; rather, she must come forward with evidence outside the pleadings sufficient to create a factual dispute with regard to the issue on which judgment is sought. Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.1992), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992)). Conclusory arguments in the non-movant's brief are not adequate to create an issue of fact, and are insufficient to avoid summary judgment. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir.2003).

## III. The record before the Court:

The evidence before the Court reflects that it is not disputed that Mr. Dobbs was

sponse to the present motion was filed approximately two months after the court entered its order on the defendant's motion for summary judgment on plaintiff's failure-to-warn claim—an order which pointed out the same acquiescence by plaintiff in defendant's statement of uncontroverted facts in the earlier motion. *See,* doc. no. 279, at 5, n. 2. Plaintiff's acquiescence in defendant's statement is clearly not an oversight.)

prescribed Effexor as an antidepressant by his physician, Dr. Martha Denise Speed ("Dr. Speed"), on or about December 23, 2002. It is also not disputed that, on December 30, 2002, Mr. Dobbs committed suicide. The record also reflects that Dr. Speed had been Mr. Dobbs's physician for several years, but did not treat him for depression until December of 2002. On or about December 20, he was seen by another physician in her office, Dr. Brandt, who prescribed Lexapro for depression and stress related to the loss of Mr. Dobbs's business. Dr. Speed dep., Defendant's Ex. 2, p. 59. On December 23, Mr. Dobbs sought additional treatment, reporting to Dr. Speed that the Lexapro was not helping him. *Id.*, p. 64, lines 4–22. Dr. Speed testified that she believed it was too early to determine whether Lexapro would help him, but he had already stopped taking it. *Id.* She recommended that Mr. Dobbs undergo a psychiatric evaluation, and offered to make an appointment for him; she also noted that medication could be administered at a hospital. Dr. Speed dep., Defendant's Ex. 2, p. 67, lines 4–25; p. 68, lines 1–23. However, Mr. Dobbs declined to have the psychiatric evaluation or seek hospital treatment, and he asked Dr. Speed to prescribe a different medication. *Id.* He and Mrs. Dobbs assured Dr. Speed that, if he had any other episodes prior to his next scheduled appointment with her, Mr. Dobbs would go directly to the emergency room. *Id.*, p. 67, lines 4–18. Dr. Speed decided to prescribe a low dosage of Effexor, and she scheduled a follow-up examination in two weeks. *Id.*, p. 63, lines 4–12.

Mr. and Mrs. Dobbs relied on Dr. Speed to select the antidepressant to prescribe. Plaintiff's dep., Defendant's Ex. 3, p. 287, lines 3–7. Plaintiff testified that she had never heard of Effexor until it was prescribed by Dr. Speed; she and Mr. Dobbs had never seen it advertised, and she did not know Effexor was manufactured by Defendant. *Id.*, p. 286, lines 3–11; 12–22. Prior to Mr. Dobbs's death, Plaintiff never saw a warning label or package insert for Effexor. *Id.*, p. 311, lines 11–25; p. 312, lines 1–2.

Dr. Speed testified that, in selecting medications to prescribe for her patients, she did not rely on the manufacturer's advertisements or its pharmaceutical sales representatives; instead, she relied on her "own research and experience," and consulted the Physicians' Desk Reference,[2] especially with regard to drug interactions, adverse reactions, side effects, and dosage. Dr. Speed dep., Defendant's Ex. 2, p. 28, lines 20–25; p. 29, lines 1–2; p. 101, line 25; p. 102, lines 1–8. Although Dr. Speed recalled Defendant's representative, Damon Williams, was a pharmaceutical salesman who regularly called on her office, she testified that she seldom had time to meet with him or with other pharmaceutical representatives. She did not recall whether Damon Williams specifically provided any written material regarding Effexor. Dr. Speed also testified that pharmaceutical representatives visited her office regularly; they all left "tons of paper" in her office, but she "didn't have time to read" their material. *Id.*, p. 29, lines 3–16. Although she recalled having reviewed information that Effexor differed from some other antidepressants in that it affected both norepinephrine and serotonin, resulting in a "dual action" effect, she did not testify that this information was provided to her by Damon Williams or by Defendant. Dr.

---

**2.** The Physician's Desk Reference for an FDA-approved drug incorporates the FDA-approved labeling. *Werderitsh v. Sec'y of Health and Human Svces*, 2005 WL 3320041, at *8, n. 22 (Fed.Cl.2005); *cf. Thom v. Bristol–Myers Squibb Co.*, 353 F.3d 848, 850 (10th Cir.2003) (approved package insert reproduced in the PDR); 21 C.F.R. § 202.1(*l*)(2).

Speed "never relied on" pharmaceutical representatives, or anything they gave her, to educate herself regarding a drug. *Id.*, p. 27, lines 16–25; p. 28, lines 1–19 and 20–25; p. 29, lines 1–2; p. 101, lines 24–25; p. 102, lines 1–8.

The record also reflects that Damon Williams testified that Defendant encouraged its representatives to emphasize the ability of Effexor to achieve remission of symptoms of depression as a means of distinguishing Effexor from other antidepressants. Williams dep., Plaintiff's Ex. D, p. 52–54. The Division of Drug Marketing, Advertising, and Communications ("DDMAC") of the Food and Drug Administration ("FDA") sent Defendant a letter in 2000, criticizing Defendant's promotional campaign in which it claimed or implied that Effexor XR [3] "can get patients 'beyond better to well' and can 'bring patients to true wellness.'" FDA Letter, Plaintiff's Ex. B. The DDMAC characterized the advertisement as misleading because data did not support the implication that Effexor XR could "cure" depression or cause its "remission." *Id.* The DDMAC letter closed by stating it "recommends" Defendant immediately discontinue the use of these promotional materials and provide of list of its materials containing the subject phrases. *Id.* The record also reflects that, in 2004, the DDMAC again sent a letter in which it advised Defendant that the DDMAC found misleading the advertising materials stating or implying that Effexor XR's remission impact was greater than that of other antidepressants. Plaintiff's Ex. F.

*IV. Application:*

■■■ Under Oklahoma law, a claim of misrepresentation is analyzed as a fraud claim because Oklahoma has not recognized an intentional misrepresentation cause of action separate from an action based on fraud. *Nichols v. Pray, Walker, Jackman, Williamson & Marler, P.C.*, 144 P.3d 907, 912 (Okla.Civ.App.2006). To prevail on a claim of fraud, a plaintiff must establish that the defendant knowingly made a false material representation, or made the representation recklessly without any knowledge of its truth; plaintiff must also establish the defendant made the representation with the intent that the plaintiff should act on it, that the plaintiff acted in reliance on the representation, and that she thereby suffered injury.[4] *D & H Co. v. Shultz*, 579 P.2d 821, 824 (Okla.1978); *P.E.A.C.E. Corp. v. Okla. Natural Gas Co.*, 568 P.2d 1273, 1277 (Okla.1977).

In this case, Defendant contends that Plaintiff cannot satisfy these elements as a matter of law because the undisputed facts establish that no misrepresentation has been identified and that, in any event, Plaintiff cannot establish the requisite element of detrimental reliance. In response, Plaintiff argues at length that Defendant represented to Dr. Speed, in its advertisements or the materials provided by its sales representatives, that Effexor's efficacy in treating depression was significantly greater than that of similar antidepressants.

Based on the FDA letters criticizing advertisements suggesting that Effexor XR could "cure" depression or result in the

---

**3.** It is not disputed that Effexor XR is the extended-release version of Effexor.

**4.** Plaintiff suggests that, by listing five elements which must be established by Plaintiff to prevail on this claim, Defendant has increased her burden of proof. Some Okla-

homa decisions enumerate three elements of proof. However, a review of the relevant Oklahoma decisions reflects that, despite differences in the number of enumerated elements, the decisions dictate the same proof burden. Accordingly, the Court does not find Plaintiff's argument persuasive.

remission of symptoms, Plaintiff contends Defendant's representation was false and that Defendant knew it to be false. Plaintiff notes also argues that Dr. Speed testified the "dual action" effect of Effexor was at least part of the reason she chose it for Mr. Dobbs. Although Plaintiff does not dispute the validity of the dual action effect, she argues there is evidence that such effect occurs only where the dosage reaches 150 milligrams per day. The record reflects that Mr. Dobbs was initially prescribed only 37 and one half milligrams per day, to be increased to 75 milligrams per day after one week. Dr. Speed dep., Defendant's Ex. 2, p. 71, lines 1–7. Thus, Plaintiff argues that Defendant falsely represented Effexor's dual action effect to Dr. Speed, and she contends that the evidence creates an inference which should be drawn in her favor, precluding summary judgment, that Dr. Speed relied on the alleged false representation in selecting Effexor for Mr. Dobbs.

■ Having fully reviewed the record, the Court finds that Plaintiff's evidence is insufficient to create a material factual dispute on the elements of her misrepresentation claim. The record establishes that the only representation that could form the basis for the claim must have been made to Dr. Speed, as Plaintiff testified she and Mr. Dobbs relied only on Dr. Speed in selecting Effexor. Plaintiff offers no evidence to contradict her testimony that, prior to receiving Dr. Speed's prescription, they were not aware of Effexor, had seen no advertisement or material regarding Effexor, and did not even know Defendant manufactured it. Thus, the only individual who could have relied on a purported misrepresentation is Dr. Speed.

■ The record establishes that there is insufficient evidence to create a material factual dispute regarding Plaintiff's contention that Dr. Speed relied on a false representation by Defendant in making the decision to prescribe Effexor for Mr. Dobbs. Although Dr. Speed testified that her personal research suggested a dual action benefit from Effexor, she did not testify that she selected Effexor for Mr. Dobbs on that basis alone. In fact, she testified at some length that she researched the antidepressants available at the time, taking into consideration Mr. Dobbs's statement that he received no benefit from Lexapro. She also testified that she thought Mr. Dobbs's decision was premature, as he had taken Lexapro for a very short time. Dr. Speed dep., p. 64, lines 11–13. Dr. Speed also testified that she did not recall Defendant's sales representative suggesting that Effexor's remission rate was greater than that of other antidepressants. Dr. Speed dep., p. 86– lines 18–25; p. 87, lines 1–3. Plaintiff argues that this creates a factual dispute because Dr. Speed also stated the representative *could* have made such a statement; however, there is no evidence that he did so, and Plaintiff's speculation is insufficient to factually dispute the evidence. Dr. Speed testified at length that she did not rely on *any* representation of Defendant or its sales representatives in selecting Effexor for Mr. Dobbs:

> Q. Okay. Now, correct me if I misstate based on your answer, but are you telling us that from some source you recall obtaining information about Effexor achieving remission of the symptoms of depression in patients more than, for example, the SSRIs; is that a fair summary of what you just told me?
>
> A. What I had read on the drug when I was trying to educate myself was when you look at the neural transmitters that are there at the nerve ending, there's several of them that affect, you know, mood and behavior and how a patient's going to act. And if the supply is low, whether it be an uptake problem or some—something else that depletes

the supply of serotonin or norepineph-rine, if the amount of the drug or the serotonin or norepinephrine are low, then the patient will have a bigger chance of having depression or mood or behavioral problems.

Most of the SSRI's, they targeted the serotonin portion of that. There are other receptors, Dopamine and norepinephrine and others that are in that little pool of chemicals that cross those membranes in those cells. So instead of just affecting the serotonin, the Effexor also affected norepinephrine levels. And so when you an get both of them to a happier state for the patient, then you may have a better chance of helping their depression than just addressing the serotonin by itself. And this was a conclusion I came to reading about the drug myself.

Dr. Speed dep., p. 87/4–88/9.[5]

Nor is there evidence to suggest that Defendant or its representatives misrepresented the dual action benefits of Effexor at low dosage levels, or that Dr. Speed's selection of the dosage level to prescribe for Mr. Dobbs was based on any representation made by Defendant or its representatives. Again, Dr. Speed expressly testified that she did not rely on anything given to her by Defendant or other pharmaceutical companies when she prescribed medication for her patients. More important, she did not rely on anything given to her by Defendant when she decided to prescribe Effexor for Mr. Dobbs.

Furthermore, as Defendant points out, Plaintiff's claim of damages allegedly resulting from a misrepresentation is not based on the efficacy of the Effexor dosage selected or on the dual action impact of Effexor. Plaintiff does not claim that the harm she suffered was caused by any representation regarding either of these points. Instead, she seeks damages based on the contention that Effexor was unsafe because it caused Mr. Dobbs to commit suicide. Plaintiff offers no argument or authority sufficient to create a material factual dispute regarding her contention that the injury sustained was causally related to any misrepresentation by Defendant regarding the dual action benefits of Effexor or that its remission rate was greater than that of other antidepressants. Thus, even if the evidence supported the claim that these factors were misrepresented and that Dr. Speed relied on the misrepresentation, Plaintiff offers no evidence to support a causal connection between the claimed misrepresentation and Mr. Dobbs's suicide.

The undisputed facts in the record establish that Plaintiff cannot offer evidence sufficient to create a material factual dispute regarding her claim of misrepresentation. Accordingly, Defendant is entitled to judgment on that claim.

## V. Conclusion:

For the reasons set forth herein, Defendant's motion for summary judgment [Doc. No. 289] is **GRANTED**. Judgment shall enter accordingly.

---

**5.** See also, Dr. Speed's deposition at 28/23—29/2 ("I can tell you that I did not use drug—pharmaceutical reps for education." "I relied on my own research and experience."); 102/5–8 ("I educated myself. I didn't have the drug reps educate me, so I didn't rely on anything they gave me.").